Welch, J.
In 1854 John Morris was arrested and convicted of counterfeiting in Lucas county, and thence sent to the penitentiary for the term of five years. In 1856, while in the penitentiary undergoing his sentence, he became insane, and was transferred, by order of the governor, to the Northern Lunatic Asylum, under the provisions of the act for that purpose. 2 S. & C. Stat. 850, sec. 58. He remained in the asylum till 1865, when, the superintendent deeming him incurable, an order was made by the trustees of the asylum for his discharge, and the defendant, then probate judge of Lucas county, was duly notified thereof by the superintendent, and requested to cause his removal to Lucas county. This the defendant declined to do, on the alleged ground that Morris was not, and never had been, a resident of said county, or a citizen of Ohio. The answer of the defendant sets up and asserts this want of residence and citizenship, and there is no proof in the case to show either. On the contrary, the depositions show that Morris never was a resident of Lucas county, and make a prima facie case to show that he was not a citizen of Ohio, by proving that he came to Lucas county from Illinois, a short time before his arrest.
Under this state of facts we are asked for a mandamus *against the probate judge, to compel him to issue his warrant for the removal of Morris to Lucas county.
*138 Section 27 of the act relating to lunatic asylums (S. & G. 845), provides:
. . . “And whenever an order shall be made out'for the removal of a patient from an asylum, the superintendent shall forthwith give notice thereof, under seal of the asylum, to the probate judge of the county from which such patient was sent, and thereupon such probate judge shall forthwith issue his warrant to the sheriff, or some other suitable person (giving the relatives of the patient the preference), which warrant shall be substantially as follows,” etc.
The form of warrant prescribed commands the party to whom it is addressed, “to remove said patient, and return him to-township in the county, of which he is an inhabitant.”
Section 19 of the same act declares, that no person shall be admitted into either of the asylums except he be a citizen of Ohio, and an inhabitant of the district in which the asylum is located, having resided one year in the state.
Section 20 gives the form of the affidavit on which the inquest of lunacy is founded, and requires that it shall set forth that the lunatic “ has a legal settlement in-township in said county.”
Taking these provisions together, it seems to us evident that the legislature did not intend the return of a patient to a county where he was not an inhabitant, or had not a legal settlement. The notice required by section 27, is to bo given to the probate judge of the county from which the patient was “ sent.” The patient in this case was not, in any sense of the word, “sent” from Lucas county. He was sent from the penitentiary, in Franklin county. How could the probate judge of Lucas county issue his warrant for the patient’s return, reciting in the warrant, as the statute requires he should, that the patient was an “inhabitant” — that is, that he had a “legal settlement” — in a particular township in that county?- He could only do so by utterly disregarding the admitted facts of the case. It seems plain that the proceedings provided for in section 27, for the return of a patient — the notice by *the superintendent to-the judge, and the issuing of a warrant for his return by the latter —can properly be had only in cases where a lunatic, having a settlement in the county, has been regularly sent up as an inhabitant thereof, agreeably to the provisions in the preceding sections. In such cases the officers of the asylum have papers, which they receive with the patient, showing from what county he was sent,, and the fact that he is an inhabitant thereof. The proceedings for *139 sending and those for returning the patient, are correlative, and apply to the same cases.
This decision is not at all in conflict with that in the case of the State ex rel. Hills v. Burgoyne, 7 Ohio St. 154. The notice in that case was given to the probate judge of the county from which the patient was regularly sent. In such case the judge has no discretion, and is bound to issue his warrant on receipt of the notice. But a notice to the probate judge of a county from which the patient was not sent, is unauthorized by law, and may be regarded by the judge as a nullity.
The mandamus is refused.
Day, C. J., and White, Brinkerhoee, and Scott, JJ., concurred.